**06 CV 2037**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RAY POMROY, suing on behalf of himself
and all other former and present employees
of defendant similarly situated,

                        Plaintiff,

           - against -

CONOPCO, INC. a/k/a UNILEVER,

                       Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

06 CV ____

**NOTICE OF REMOVAL**

[RECEIVED stamp: MAR 15 2006, U.S.D.C. S.D.N.Y. CASHIERS]

    PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, Defendant Conopco, Inc. a/k/a Unilever ("Unilever") hereby removes the above-entitled action, pending in the New York State Supreme Court, County of New York, to this Court. In support of its Notice of Removal, Unilever respectfully alleges as follows:

    1. On or about February 15, 2006, an action entitled *Ray Pomroy v. Conopco, Inc. a/k/a Unilever*, Index No. 102220/06, was filed in the New York State Supreme Court, County of New York. A true and correct copy of the Summons and Complaint is attached as Exhibit A. On February 16, 2006, Unilever's counsel accepted service of the Summons and Complaint. *See* Exhibit B. These papers constitute all of the processes and pleadings to date.

    2. The Complaint sets forth, *inter alia*, two federal statutory claims alleging retaliation, one under the Age Discrimination in Employment Act of 1963, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA") and the other under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). *See* Complaint ¶¶ 1, 53-60.

    3. Given that Plaintiff asserts that Unilever has violated the laws of the United States, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331.

NY:985585v1

4. Pursuant to 28 U.S.C. §§ 1441(a) and (b), Unilever therefore removes this action to this Court. In addition, pursuant to 28 U.S.C. § 1441(c), this Court has pendent jurisdiction over Plaintiff's New York State law claim filed under the New York State Human Rights Law, N.Y. Exec. Law, § 290 *et seq. See* Complaint ¶¶ 49-50.

5. In accordance with the requirements of 28 U.S.C. § 1446(b), this Notice of Removal has been timely filed within 30 days after Unilever's receipt of the Summons and Complaint. Unilever has not yet answered or otherwise responded to the Summons and Complaint in the State Court action, nor has its time to respond expired.

6. Unilever has served this Notice of Removal upon Plaintiff's counsel, Martin Lee, Esq. and Avi Lew, Esq., Warshaw Burstein Cohen Schlesinger & Kuh, LLP, 555 Fifth Avenue, New York, New York 10017, and shall file a copy of this Notice of Removal with the Clerk of the New York State Supreme Court, County of New York.

7. By filing this Notice of Removal, Unilever does not waive any defenses that might be available to it.

WHEREFORE, Unilever respectfully removes the above-entitled action now pending in the New York State Supreme Court, County of New York, to the United States District Court for the Southern District of New York.

Dated:   March 15, 2006

Respectfully submitted,

EPSTEIN BECKER & GREEN, P.C.

By: _____
Ronald M. Green (RC-7766)
Barry A. Cozier (BC-7110)
Barry Asen (BA-6312)
250 Park Avenue
New York, New York 10177
(212) 351-4500

ATTORNEYS FOR DEFENDANT

Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
RAY POMROY, suing on behalf of himself :
and of all other former and present employees
of defendant similarly situated,                           :
                                                                        : Index No.
                            Plaintiff, :
                                        : **COMPLAINT**
               -against-     :

CONOPCO, INC. a/k/a UNILEVER,           :
                             Defendant.    :
-------------------------------------------------------------X

        Plaintiff, Ray Pomroy, on behalf of himself and of all other former and present employees of defendant who are similarly situated and affected by defendant's unlawful age discrimination and who may hereafter intervene in this action, by his attorneys, Warshaw Burstein Cohen Schlesinger & Kuh, LLP, alleges as follows:

        1.    On January 20, 2005, plaintiff filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the New York State Division of Human Rights in accordance with the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., as amended by the Older Workers Benefit Protection Act ("OWBPA")(hereinafter referred to as the "Discrimination Act"). A copy of the charge is annexed hereto as Exhibit 1 and incorporated herein by reference.

        2.    By letter dated December 5, 2005, the EEOC issued a Notice of Right to Sue which notified plaintiff that it had received a copy of the charge and advised plaintiff that he had the right to commence this action. A copy of the Notice of Right to Sue is annexed hereto as Exhibit 2 and incorporated herein by reference.

{502920;1}

## THE PARTIES

3. Plaintiff resides at 1049 Indian Road, Mississauga, Ontario, Canada, and was 56 years old on the date of his termination. At all times hereinafter mentioned plaintiff was a protected employee within the meaning of the New York State Human Rights Law and the Discrimination Act.

4. Upon information and belief, defendant Conopco, Inc. a/k/a Unilever (hereinafter "Conopco" or "Unilever") is a corporation organized and existing under the laws of the State of New York, with its corporate headquarters formerly located at Lever House, 390 Park Avenue, New York, New York which were subsequently moved to 800 Sylvan Avenue, Englewood Cliffs, New Jersey and was and is an employer within the meaning of the New York State Human Rights Law and 29 U.S.C. § 621 et seq. and 42 U.S.C. § 12101 et seq.

5. Defendant Conopco did maintain places of business, during the duration of the unlawful acts alleged herein, located in New York County and a substantial part of the unlawful acts set forth below occurred in this county.

6. Defendant Conopco is incorporated under the laws of the State of New York.

## FACTS

7. Plaintiff lived in Stamford, Connecticut during most of the events of which he complains.

8. In April, 2004, plaintiff moved to 2399 Doulton Drive, Mississauga in the Province of Ontario, Canada and subsequently, in April, 2005, moved to his current address of 1049 Indian Road, Mississauga, Ontario, Canada.

{502920;1}                                2

9. For over thirty-seven years and until March 31, 2004, plaintiff had been employed by Conopco, which sometimes did business as Unilever and sometimes did business as Unilever Home and Personal Care North America (hereinafter "HPC").

10. From 2000 until the termination of his employment, plaintiff held the position of Vice President of the Personal Care Supply Chain for the Home and Personal Care division of Unilever's North American operations.

11. In that position, plaintiff was accountable for all elements of the North American supply chain of certain Unilever product lines totaling approximately $2.8 billion in annual sales. As such, he was responsible for in excess of approximately 3,000 employees.

12. During the last few years of plaintiff's employment, Conopco adopted a goal of reducing the average age of its management team by disposing of its older managers.

13. In announcing Unilever's 2002 results, the Chairman of Unilever, Niall Fitzgerald, stated with pride to a group of financial analysts, that the average age of Unilever's management team had been reduced by ten years

14. On another occasion, Mr. Fitzgerald suggested to Charles Strauss, the President of United States operations, that he review his senior management and dispense with managers who are over 50 years old as part of a "restructuring."

15. Conopco's goal of weeding out older managers was coupled with a policy of favoring "young managers." For example, in late December 2003, the Chairman announced his intention of meeting with a group of "young managers" who were believed to have "high-potential." No such invitations were extended to older, veteran managers.

16. In late 2003, plaintiff became the then latest target of Conopco's transparent attempt to get rid of its older managers. At the time, plaintiff was the oldest Vice

{502920;1}                                      3

President in the HPC North American Supply Chain of Unilever with the longest tenure.

17. At that time, plaintiff had a long record of distinguished service to Conopco and had performed his job well.

18. In early December 2003, plaintiff was informed by his immediate superior Greg Polcer, Senior Vice President of the North American HPC Supply Chain, that, under the guise of a restructuring, the number of manufacturing plants for which he was to be responsible was being reduced by 50% (i.e., from six to three). Plaintiff's duties at that time included constant travel for frequently as much as five days each week to six facilities around the country.

19. At that same time, plaintiff was also instructed that, once the reorganization took effect, he would have to transfer to Chicago, Illinois. Plaintiff asked if his own age had bearing upon defendant's actions, which enquiry angered defendant.

20. Plaintiff's superiors at Conopco were aware that it would have been problematic for plaintiff and his family to relocate to Chicago.

21. Plaintiff inquired of Conopco, on or about December 4, 2003, as to the possibility of commuting from his Connecticut residence to Chicago and was informed that this would not be possible and that Conopco would no longer permit management employees to commute long distances (as had theretofore been allowed).

22. Plaintiff was also told that if he did not agree to the transfer, he would be terminated from his employment at Conopco.

23. Because plaintiff declined to be relocated to Chicago, he was terminated and compelled to attempt to negotiate a "retirement" package.

24. Plaintiff realized that his benefits were being wrongfully computed and despite plaintiff's urging that he be permitted to have an extension of employment in order to

{502920;1}                              4

finalize matters regarding his pension, defendant categorically refused. Approximately one and a half years later, defendant finally admitted part of its "error" and tendered a lump sum payment of approximately $10,000 (Canadian) to plaintiff, supposedly to adjust for the earlier shortfall, but even that amount was insufficient.

25. Plaintiff's last day of employment was March 31, 2004.

26. Subsequently, plaintiff learned that notwithstanding the alleged restructuring and Conopco's supposed new policy against long distance commuting, plaintiff's younger colleagues were not subjected to this policy.

27. For example, Alan Raleigh, a younger (by more than ten years) Vice President in the North American Supply Chain Division, who also resided in Connecticut and supervised two manufacturing plants (one of which was scheduled to close as part of the restructuring) for certain product lines, was promoted; plaintiff's employment was terminated.

28. Plaintiff also discovered that the much younger employee – then 42 years old -- who replaced him, Mark Iaia ("Iaia"), was also promoted and allowed to commute from Connecticut to Chicago and that Iaia was never compelled to move to Chicago as was plaintiff. Indeed, Iaia, who was first offered a year to relocate, promptly categorically rejected any such move on any timetable, but was nonetheless unconditionally promoted and allowed to commute as the job required.

29. At least two other Vice Presidents at Conopco were allowed to continue commuting long distances to their Conopco offices.

30. Plaintiff's specific responsibilities were redistributed to much younger executives in the company.

31. By terminating plaintiff's employment, Conopco not only subjected him

{502920;1}                                                    5

to unfair disparate treatment, but also deprived him of certain pension rights to which he would have been entitled.

32. For example, had Conopco allowed plaintiff to commute to Chicago (as Iaia was permitted to do) and continue in employment through at least February 2005, he would have been able to structure his retirement so as to receive full pension benefits instead of the diminished pension benefits he now receives for his 37 years of dedicated service.

33. A portion of plaintiff's pension is payable out of Conopco's own funds.

34. When plaintiff complained that Conopco's actions were discriminatory against him as an older employee, he was made to feel unwelcome and various benefits to which he was entitled or which had been promised to him, were withdrawn.

35. Emblematic of defendant's retaliatory behavior was its reneging upon the promised customary farewell celebration or other considerations afforded to departing long-tenured employees.

36. Plaintiff was provided with incomplete and inaccurate information regarding his pension rights, and was then informed that previous estimates regarding his pension benefits had been overstated and were, at that point, being reduced.

37. This reduction constituted a violation of Canadian pension law.

38. Plaintiff was also deprived of accrued vacation benefits to which he had been entitled.

39. This deprivation of accrued vacation benefits is also a violation of Canadian law.

40. On plaintiff's last day of employment, defendant finally provided plaintiff with what was purported to be "complete" information regarding his pension rights. It was

inaccurate.

41. Plaintiff is still awaiting the vacation pay to which he was entitled.

42. Defendant also did not timely remit to plaintiff even the wrongfully calculated pension payments, for his first and second month of retirement thereby violating Canadian pension laws.

43. As a result of having raised the issue of having been mistreated on account of age, plaintiff was retaliated against in many different ways, including, inter alia, (a) Conopco's reneging on its commitment to obtain, at its expense, a "green card" for plaintiff; (b) in deliberately delaying the pension information as hereinabove delineated; (c) in deliberately delaying pension payments as hereinabove delineated; (d) failing to provide proper information with respect to plaintiff's data entitlement under the Discrimination Act; (e) failing seasonably to provide subsequent versions of a proper severance agreement and in that severance agreement presenting as a quid pro quo, elements which are plaintiff's as of right; (f) failing timely to provide plaintiff with correct pension figures even as based on the improperly truncated severance offer; and (g) failing to pay for plaintiff's home closing costs.

44. The three versions of defendant's proposed severance agreement to plaintiff were all prepared in New York by defendant's New York attorneys at Lever House, its then corporate headquarters on Park Avenue in New York City.

45. The proposed severance agreements provided that New York Law would govern the instrument.

46. The decision to terminate plaintiff was made in whole or in part by defendant in New York.

## FIRST CLAIM
## (AGE DISCRIMINATION IN VIOLATION OF
## <u>NEW YORK STATE HUMAN RIGHTS LAW</u>)

47. Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 46 hereof with the same force and effect as if herein fully repeated.

48. Plaintiff was and is a member of a group covered and protected by the New York State Human Rights Law.

49. Age was a determining factor in defendant's decision to terminate plaintiff and other employees similarly situated.

50. Defendant's conduct violated the New York State Human Rights Law, N.Y. Executive Law § 290 <u>et seq.</u>, and specifically § 296 subd. 1(a).

51. By reason of defendant's willful and unlawful acts set forth herein, plaintiff is entitled to damages in an amount equal to the salary, bonus, commissions and fringe benefits he would have earned up to and including the date of normal retirement and additional expenses incurred by him by reason of defendant's acts.

52. The manner of defendant's notification to plaintiff that he was terminated based on his refusal to relocate after almost four decades of excellent performance for which he never received negative comments, was viciously and wantonly unfeeling and cruel, caused and continues to cause plaintiff enormous mental anguish and emotional distress which was, or reasonably could and should have been foreseen by defendant.

## SECOND CLAIM
## <u>(VIOLATION OF TITLE VII AND THE DISCRIMINATION ACT -- RETALIATION)</u>

53. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 52 hereof with the same force and effect as if herein fully repeated.

{502920;1}                                                    8

54. Plaintiff opposed defendant's unlawful employment practices by informing Conopco's managers that there were problems with unequal treatment of older employees, and by filing charges of discrimination with the EEOC. Such activities are protected under § 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, and the Discrimination Act.

55. Following such actions, plaintiff's employment was terminated by Conopco.

56. In response to being advised of his termination, plaintiff expressed his belief that his termination was discriminatory.

57. Defendant thereafter retaliated against plaintiff by, *inter alia*, depriving him of pension entitlements in various ways and by depriving him of accrued vacation time, sick days to which he had been entitled and by refusing to pay for his house closing.

58. These actions constitute retaliation in violation of § 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3 and the Discrimination Act.

59. Defendant's discriminatory practices described above have caused employees harm, including emotional distress and loss of wages.

60. In acting as above described, defendant violated employee's rights protected by § 704 of Title VII of the Civil Rights Act of 1964, and the Discrimination Act.

## DEMAND FOR JUDGMENT

**WHEREFORE**, plaintiff demands judgment against defendant as follows:

A. Declare that the practices described in this complaint exist at Conopco and that they are unlawful;

B. Issue a permanent injunction prohibiting Conopco, its employees, agents, officers and successors, from engaging in the discriminatory employment practices complained of herein;

C. Issue a permanent mandatory injunction requiring that Conopco adopt employment practices in conformity with the requirements of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the Discrimination Act;

D. Award back pay and other job benefits sufficient to make plaintiff whole;

E. Award compensatory and punitive damages to plaintiff appropriate to the proof at trial;

F. Award reasonable attorneys' fees and costs, including expert fees; and

G. Order such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 3, 2006

>                                 WARSHAW BURSTEIN COHEN
>                                 SCHLESINGER & KUH, LLP
>                                 Attorneys for Plaintiff
>
>                                 By: ___/s/ Avi Lew___
>                                     Avi Lew
>                                 555 Fifth Avenue
>                                 New York, New York 10017
>                                 (212) 984-7700

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA<br>☒ EEOC | 160-2005-00746 |

New York State Division of Human Rights _____ and EEOC
*State or local Agency, if any*

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Mr. Ray Pomroy | 905-891-3109 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 2399 Doulton Drive | Mississauga, Ontario, Canada, L5H 3M4 | 2/19/48 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| CONOPCO, INC. a/k/a Unilever | Approximately 4,000 in Claimant's Division | 212-759-8888 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 725 Fifth Avenue, | New York, New York 10022 | New York |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es)):

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☒ AGE
☒ RETALIATION  ☐ NATIONAL ORIGIN  ☐ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)   LATEST (ALL)
May 2004

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Please See Attached

RECEIVED
JAN 20 2005
EEOC-NYDO-CRTIU

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Date 19TH/NOVEMBER/04  Charging Party (Signature)

NOTARY - (When necessary for State and Local Requirements)
MY COMMISSION EXPIRES SEPTEMBER 25, 2010

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)

EEOC FORM 5 (Test 10/94)

EXHIBIT 1

1. I am 56 years old and lived in Stamford, Connecticut during most of the events of which I complain. In April, 2004, I moved to my current address in the Province of Ontario, Canada.

2. For over thirty-seven years and until March 31, 2004, I had been employed by Unilever, which is now known as Conopco, Inc. d/b/a Unilever Home and Personal Care North America. From 2000 until the termination of my employment, I was Vice President of the Personal Care Supply Chain for the Home and Personal Care division of Unilever's North American operations, accountable for all elements of the North American supply chain of certain Unilever product lines totaling approximately $2.8 billion in annual sales as such, I was responsible for in excess of 3,000 employees.

3. During the last few years of my employment, Unilever adopted a goal of reducing the average age of its management team by disposing of its older managers. In fact, in announcing Unilever's 2002 results, the Chairman of Unilever, Niall Fitzgerald, stated with pride to a group of financial analysts that the average age of Unilever's management team had been reduced by ten years:

> we have implemented a Divisional organisation structure with a reinvigorated top team with some 80% of the top 100 managers different from five years ago, with an average age down by ten years.

4. On another occasion, Mr. Fitzgerald suggested to Charles Strauss, the President of United States operations, that he review his senior management and clean out managers who are over 50 years old as part of a restructuring.

5. The goal of weeding out older managers was coupled with a policy of favoring "young managers." For example, in late December 2003, the Chairman announced his intention of meeting with a group of "young managers" who were believed to have "high-potential." No such invitations were extended to older, veteran managers.

6. In late 2003, I became the then latest target of Unilever's transparent attempt to get rid of its older managers. At the time, I was the oldest and longest tenured of the Vice Presidents in the H.P.C. North American Supply Chain of Unilever. I had a long record of distinguished service to Unilever and had performed my job well.

7. In early December 2003, I was informed by Greg Polcer, Senior Vice President of the North American HPC Supply Chain, that, under the guise of a restructuring, the number of manufacturing plants for which I was to be responsible was being reduced by 50% (i.e., from six to three). I was also instructed that, once the reorganization took effect, I would have to transfer to Chicago, Illinois. As my superiors at Unilever were well aware, it would be problematic for me and my family to move to Chicago. When I inquired about the possibility of commuting from my Connecticut residence to Chicago, I was informed that this would not be possible and that Unilever would no longer permit management employees to commute long distances (as had theretofore been allowed). I was also told that if I did not agree to the transfer, I would be

473477;2



RECEIVED JAN 2 0 2005

terminated from employment.

8. Because I declined to be physically transferred to Chicago, I was terminated and had no choice but to attempt to negotiate a "retirement" package. My last day of employment was March 31, 2004.

9. However, I learned that notwithstanding the alleged restructuring and the supposed new policy against long distance commutation, my younger colleagues were not subjected to similar (mis)treatment. For example, Alan Raleigh, a younger (by more than ten years) Vice President in the North American Supply Chain Division who also resided in Connecticut and supervised two manufacturing plants (one of which was scheduled to close as part of the restructuring) for certain product lines, was also supposed to have been affected by the restructuring.[1] Indeed, this younger executive was effected. He was promoted; my employment was terminated. I also discovered that the much younger employee who replaced me, Mark Iaia, was also promoted and allowed to commute from Connecticut to Chicago. (Furthermore, I am also aware that at least two other Vice Presidents at Unilever were allowed to continue commuting long distances to their Unilever offices.) While my specific responsibilities were in fact allocated to other executives in the Company, all of those responsibilities were redistributed to much younger executives.

10. By terminating my employment, Unilever not only subjected me to unfair disparate treatment, but also deprived me of certain pension rights to which I would have been entitled. For example, had Unilever allowed me to commute to Chicago and continue in employment through at least February 2005, I would have been able to structure my retirement so as to receive full pension benefits (instead of the diminished pension benefits I now receive) for my 37 years of dedicated service (with stellar results). One can readily see the motivation for Unilever's manipulation of my pension - a portion is payable out of Unilever's own funds, not all of it is from a "qualified" separate account.

11. When I complained that Unilever's actions were discriminatory against me as an older employee, I was made to feel unwelcome and various benefits to which I was entitled or which had been promised to me, were withdrawn. (I also did not even receive the promised customary farewell celebration with service agreement afforded to departing long-tenured employees.) I was provided with incomplete and inaccurate information regarding my pension rights, and then informed that previous estimates regarding my pension benefits had been overstated and were now being reduced. I was also deprived of accrued vacation benefits to which I had been entitled.

---

[1] I asked Unilever for a list of those employees affected by the reorganization. I was provided with a list that was obviously incorrect (e.g., I was listed as a person unaffected) and incomplete (e.g., several persons affected by the reorganization were not included). My requests of Unilever for a revised (i.e., complete and accurate) list were rejected or ignored.

RECEIVED JAN 20 2005 EEOC-NYDO-CRTU

12.  On my last day of employment, I was finally provided with what purports to be "complete" information regarding my pension rights. I am still awaiting the vacation pay which I am due. I also did not receive timely my first and second month's pension payments.

13.  Since I raised the issue of my having been mistreated on account of my age, I was retaliated against in many different ways, including Respondent's reneging on its commitment to obtain, at its expense, a "green card" for me; in deliberately delaying the pension information as hereinabove delineated; Failing to provide proper information with respect to my data entitlement under the O.W.B.P.A. and failing seasonably to provide subsequent versions of a proper severance agreement and in that severance agreement presenting as a *quid pro quo* elements which are mine as of right. It is also noteworthy that in sending the latest version of a severance agreement, it was not sent until May; it was sent to a "dead address" even though months earlier the new address had been advised to many at the company. I believe it is even an element of retaliation that when my counsel wrote to one of the counsel with whom he was dealing in the company, she did not even bother responding to his questioning the non-receipt of the promised draft Severance Agreement for over two months, (i.e. from August 27, 2004 to November 4, 2004), without explanation or apology for the delay, but just in the cavalier and disdainful fashion, in which I have been treated throughout this whole saga; erroneously claimed that I signed in May for a package, when I had been gone for weeks from the address to which it had been sent, the fact of using the wrong address being well know to Respondent. Moreover, even the Severance Agreement which was sent to my counsel (but not ever to me) earlier this month, included no list of those terminated and those retained as required by the O.W.B.P.A., which in our view, should have been (a) corrected from its original erroneous contents, and (b) brought down to date to reflect the facts currently in place. I ask the rhetorical question: If we do not see the proper data, how can we determine if there is disparate impact in addition to disparate treatment?

14.  The entire fashion in which I was manipulated in respect of pension information amounts to nothing less than outright deceit. If I may be excused the vernacular, Unilever simply "played games" with me by engaging in three months of deliberate obfuscation in reaction to providing me with information. Unilever could have told me on the first business day of 2004 what my pension rights were going to be. With the termination of my employment then imposed upon me, however, despite an enormous amount of effort on my part in attempting to obtain information from personnel at Unilever in respect of the issue, I did not get the information until March 31, 2004, the very last day that I was employed!

15.  In sum, Unilever has run roughshod over rights protected by the Age Discrimination in Employment Act and various state and municipal laws as well as my rights under ERISA and equivalent Canadian laws concerning my tenure covered by those laws. It is material to note that Unilever broke Canadian law by withholding timely payment of my pension, and at a lower level than those payments themselves should have been.

473477;2        3



RECEIVED JAN 20 2005 EEOC-NYDO-CRTIU

16. I assert claims in behalf of myself and other present and former employees whose rights have been similarly violated.

4734712

4



RECEIVED JAN 20 2005 EEOC-NYDO-CRTIU

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| **To:** Ray Pomroy<br>2399 Doulton Drive<br>Mississauga, Ontario<br>Mississauga, Ontario, Canada L5H 3M4 | **From:** New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 160-2005-00748 | Donna M. Walcott,<br>Senior Investigator | (212) 336-3679 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the

☒ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Spencer H. Lewis, Jr.,
District Director

12/5/05
(Date Mailed)

Enclosure(

cc: Charing Party's Attorney
Martin R. Lee, Esq.
WARSHAW BURSTEIN COHEN SCHLESINGER & KUN LLP
555 Fifth Avenue
New York, NY 10017

Respondent's Atty
Barry Asen, Esq.
EPSTEIN BECKER & GREEN, P.C.
250 Park Avenue
New York, NY 10177-1211

EXHIBIT 2